STATE OF CONNECTICUT *v.* JASON TAYLOR
(13827)

O'CONNELL, LANDAU and HEIMAN, Js.

Argued January 5—decision released April 11, 1995

*Louis S. Avitabile,* special public defender, with whom was *Meryl Anne Spat,* for the appellant (defendant).

*Nancy L. Gillespie,* deputy assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Edward T. Ricciardi,* assistant state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals[1] from the judgment of conviction,[2] rendered after a jury trial, of kidnapping in the first degree as an accessory in violation of General Statutes §§ 53a-92 (a) (2) (A)[3] and 53a-8 (a),[4] assault in

---

[1] This appeal was taken originally to the Supreme Court. Pursuant to Practice Book § 4023, the Supreme Court transferred the appeal to this court.

[2] The defendant was charged in an information in seven counts. The trial court granted the defendant's motions for judgment of acquittal with respect to two counts and the jury found the defendant not guilty as to three of the remaining counts.

[3] General Statutes § 53a-92 (a) provides in pertinent part: "A person is guilty of kidnapping in the first degree when he abducts another person and . . . (2) he restrains the person abducted with intent to (A) inflict physical injury upon him . . . ."

[4] General Statutes § 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, com-

the first degree as an accessory in violation of General Statutes §§ 53a-59 (a) (1)[5] and 53a-8 (a). On appeal, the defendant claims that the trial court improperly (1) charged the jury on the definition of reasonable doubt, (2) admitted testimony despite the defendant's claims of irrelevance and prejudice, and (3) failed to suppress evidence when (a) the witness' identification of that evidence was tainted by an unnecessarily suggestive prior identification and (b) the state failed to establish a proper chain of custody. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On the evening of August 1, 1992, the victim, Norman Reynolds, was walking on Berkley Street in Waterbury. A vehicle operated by the victim's brother-in-law, Duane Gooch, drove up near the victim. The defendant was seated in the front passenger seat of the car and Jamel Hurtle was seated in the backseat, holding a nine millimeter weapon. When the vehicle came to a stop, Gooch asked the victim to get into the car.

The victim, who had stolen money and narcotics from Gooch, refused to enter the car fearing that Gooch was angry with him. When the victim refused to enter the car, the three men exited the vehicle and forced the victim inside. In doing so, the defendant struck the victim in the face. After the victim was forced into the car, Hurtle placed the gun in the area of the victim's ribs. Gooch threatened to tie the victim's hands and legs together, break his hands, and shoot his fingers

mands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

[5] General Statutes § 53a-59 (a) provides in pertinent part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

off. The defendant threatened to "kick [the victim's] ass really bad . . . ."

Gooch drove around in Waterbury while Hurtle kept the gun trained on the victim. Gooch finally stopped the car on Eastern Avenue and told the victim that they had arrived at the victim's "death spot." He ordered the victim out of the car and the three men forced the victim to accompany them down a hill. Hurtle pointed the gun to the victim's head and the defendant pushed the victim with his hands to keep the victim moving.

While the men were walking down the hill, Hurtle, who had the gun, slipped and fell. The victim jumped on Hurtle and tried to take the gun from him. The defendant grabbed the victim while Gooch picked up a rock and struck the victim on the head, rendering the victim unconscious. The victim was unconscious when he was shot in the chest by one of the three men.

The victim was found at about 9 p.m. that evening by uniformed officers of the Waterbury housing authority who had been alerted by a group of youths that three men were beating a man behind one of the buildings. As the officers approached the rear of the building, they heard a shot and observed three black men getting into a blue four door foreign car that was parked at the top of an embankment. The victim was transported by ambulance to a hospital where he underwent surgery.

On August 2, 1992, Detective James Clary of the Waterbury police department visited the victim in the intensive care unit of the hospital. Although unable to speak, the victim indicated in writing that he had been shot by Gooch. Clary left the hospital, located Gooch and took him into custody. Gooch implicated the defendant in the actions directed against the victim.

I

The defendant first asserts that the trial court improperly charged the jury on the definition of rea-

sonable doubt. The defendant asserts (1) that the charge as given contained an improper articulation requirement, and (2) that the trial court incorrectly declined to charge the jury in accordance with his request to charge.[6] We are unpersuaded.

At the completion of the trial court's instructions to the jury,[7] the defendant excepted to the charge concerning reasonable doubt. In his exception, the defend-

---

[6] In his request to charge, the defendant asked the court to include the following in its charge on reasonable doubt: "The law does not require that a juror be able to either give or articulate a reason for the reasonable doubt that the juror may feel. We may have a doubt in relation to things about which we can give no reason, and of which we have imperfect knowledge. It is the want of sufficient knowledge in relation to the facts allegedly constituting the guilt of the accused that causes the juror to doubt. It is the want of information and knowledge that creates the doubt. It is the lack of information and knowledge satisfying the members of the jury of the guilt of the accused with that degree of near certitude required by the law which constitutes a reasonable doubt. If you the jurors are not satisfied of the guilt of the accused with such degree of near certitude as the law requires, you must acquit whether you are able to give a reason why you are not satisfied to that degree of near certitude or not."

[7] The trial court charged on the issue of reasonable doubt as follows: "The term reasonable doubt has no technical or unusual meaning. You can understand its real meaning by placing emphasis upon the word reasonable. A reasonable doubt is not a doubt raised by someone for the sake of raising a doubt. It is not a guess, it is not a surmise, it is not a conjecture. A reasonable doubt is not hesitation springing from feelings of sympathy or pity. A reasonable doubt is a doubt founded upon the evidence. It is a doubt which grows out of the evidence or lack of evidence in a case. *It is a doubt for which you, in your own minds can give a reason based upon the evidence or lack of evidence.* A reasonable doubt is a square and honest doubt. It is the kind of doubt that would make a reasonable person hesitate to act. If the facts that you find can be explained in any way other than that the defendant is guilty, you must, of course, render your verdicts in his favor. Absolute certainty in the affairs of life, except for death and taxes, however, is almost never obtainable. And the law does not require absolute certainty on the part of the jury to authorize guilty verdicts. What is required is that guilt be proved beyond a reasonable doubt. Proof beyond a reasonable doubt, ladies and gentlemen, is proof of a sufficiently convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his or her own affairs." (Emphasis added.)

ant mounted a two-pronged attack.[8] He argued first that the instruction as given constituted an improper requirement of articulation on the part of the jurors. In addition, the defendant argued that his request to charge concerning the fact that a juror need not be able either to give or to articulate a reason for the reasonable doubt "that the juror may feel" is a correct statement of the law and that he was thus entitled to that charge.

## A

The defendant first claims that the charge that was given on the issue of reasonable doubt improperly required articulation by a juror of his or her reason for entertaining a reasonable doubt as to the guilt of the defendant. We disagree.

"The principal function of a jury charge is to assist the jury in applying the law correctly to the facts which they might find to be established . . . . When reviewing the court's instruction, our role is to determine whether, taken as a whole, [the charge] fairly and adequately present[s] the case to a jury in such a way that injustice is not done to either party under the established rules of law." (Citations omitted; internal quotation marks omitted.) *State* v. *Beliveau*, 36 Conn. App. 228, 246, 650 A.2d 591 (1994), cert. granted on other

---

[8] The defendant, as far as relevant to this issue, excepted as follows: "The first exception is in reference to the court's charge on reasonable doubt where the court said that reasonable doubt is doubt for which you can give a reason in your own mind arising out of the evidence or lack of evidence.

"As I indicated in my request to charge, as indicated in the state cases cited in my request to charge, it is our position that a jury may feel a reasonable doubt as to the guilt of the defendant and yet find it difficult to state the reason for the doubt either to himself or to the other jurors. And a juror may have difficulty in articulation. . . . [T]he court should amend that portion to at least add reasonable doubt for which you feel or give a reason in your own minds arising out of the evidence or lack of evidence. So that the jury is clearly told that it is not necessary that a reasonable doubt needs to be articulated to themselves or to each other."

grounds, 232 Conn. 910, 654 A.2d 354 (1995); see also *State* v. *Campbell*, 225 Conn. 650, 661, 626 A.2d 287 (1993).

In reviewing the charge as a whole, we conclude that the charge as given fairly presented the issue of reasonable doubt to the jury. We do not, in fact, agree with the defendant that the charge as given contained any improper articulation requirement.

The defendant points specifically to that portion of the charge that defined reasonable doubt as "a doubt for which you, in your own minds, can give a reason based upon the evidence or lack of evidence." Our Supreme Court, has held that such a definition does not require articulation, but rather makes clear that reasonable doubt should be based on reason rather than speculation. *State* v. *Derrico*, 181 Conn. 151, 170–71, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980).

Our Supreme Court has reviewed various jury charges that have required reason to be the basis of a finding of reasonable doubt. In *Derrico*, the court concluded that a charge that defined reasonable doubt as a doubt "for which you can, in your own mind, conscientiously give a reason"; id., 171 n.4; did not, when taken as a whole, dilute the state's burden of proof or shift that burden to the defendant. Id., 170–71. The court read that language instead as defining the term reasonable doubt as one founded on reason as opposed to speculation. Id., 171. Similarly, in *State* v. *Findlay*, 198 Conn. 328, 345–46, 502 A.2d 921, cert. denied, 476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 721 (1986), our Supreme Court concluded that a definition of reasonable doubt as a "doubt for which a valid reason can be assigned" merely provided a method by which jurors could test the reasonableness of a doubt. The court viewed the charge given as a whole and determined that the jury was sufficiently guided. Id., 346.

More recent challenges to language similar in content to that found in *Derrico* and *Findlay* have also been rejected by our Supreme Court. See, e.g., *State* v. *Campbell*, supra, 225 Conn. 661 (reasonable doubt is doubt for which valid reason can be assigned); *State* v. *Gomez*, 225 Conn. 347, 353 n.8, 622 A.2d 1014 (1993) (reasonable doubt is "a doubt for which a reasonable man or woman can give a valid reason"); *State* v. *Adams*, 225 Conn. 270, 291, 623 A.2d 42 (1993) (reasonable doubt is doubt for which valid reason can be assigned); *State* v. *Thomas*, 214 Conn. 118, 119 n.1, 570 A.2d 1123 (1990) (reasonable doubt is doubt for which valid reason can be assigned); *State* v. *Lytell*, 206 Conn. 657, 664–65, 539 A.2d 133 (1988) ("a reasonable doubt means this: It is a doubt for which a reasonable person can give a valid reason"). Likewise, the charge here did not improperly require the jurors to articulate a reason in order to find the defendant not guilty, but merely defined reasonable doubt as a doubt based on reason.

We note also that even if the charge were construed to be an articulation charge, the defendant would still not prevail on his claim. While our Supreme Court has disapproved of reasonable doubt charges that set forth a definition of reasonable doubt as " 'a doubt for which if necessary you can give an explanation . . . to your fellow jurors in the jury deliberation room' "; *State* v. *Jeffrey*, 220 Conn. 698, 719, 601 A.2d 993 (1991), cert. denied, 505 U.S. 1224, 112 S. Ct. 3041, 120 L. Ed. 2d 909 (1992); it nonetheless has held that such a charge does not constitute reversible error in an otherwise adequate charge. See also *State* v. *Ireland*, 218 Conn. 447, 457, 590 A.2d 106 (1991).

Here, the charge as to reasonable doubt constituted a more than adequate charge on that important issue. The trial court correctly charged the jury on the concept of reasonable doubt in such a manner as to make clear to the jury the heavy burden borne by the state

in a criminal prosecution. The trial court included in its instructions to the jury, in substance, those requests that were accurate statements of legal principles and omitted only those portions that were not legally correct. The charge by the trial court correctly defined for the jury the concept of reasonable doubt and adequately incorporated those of the defendant's request to charge to which he was entitled.

The defendant's attack on the reasonable doubt charge as given is without merit.

B

The defendant next posits that the charge that he sought on the issue of reasonable doubt was a correct statement of the law and that he was, therefore, entitled to receive the charge that he requested. We disagree with the defendant's basic assertion that his request contained a correct statement of the law.

The defendant relies on the majority opinion in *State* v. *Campbell*, supra, 225 Conn. 661–62, as support for his claim that his request to charge was a correct statement of the law. Although *Campbell* does caution against the use of "potentially confusing" jury instructions that require jurors to articulate a reason for finding reasonable doubt, our Supreme Court found that such an error would not render an otherwise adequate instruction defective. Id.; see also *State* v. *Jeffrey*, supra, 220 Conn. 719. We cannot read the *Campbell* decision as adopting a legal philosophy that requires an affirmative instruction to the jury that it need not be able to articulate a reason for which the evidence fails to convince them beyond a reasonable doubt of the defendant's guilt. The defendant's reliance on *State* v. *Campbell*, supra, 661–62, is therefore misplaced.

Our opinion is buttressed by the fact that at the time that *Campbell* was decided, two cases were pending

before the Supreme Court involving similar issues of claimed articulation requirements within jury instructions on reasonable doubt. In *State* v. *Johnson*, 228 Conn. 59, 60, 634 A.2d 293 (1993), the Supreme Court dismissed the defendant's appeal concerning claimed improprieties in a jury instruction that defined reasonable doubt as a doubt "for which a valid reason may be assigned." The Supreme Court concluded that its original grant of certification had been improvidently granted and that the issue was "fully considered and properly resolved against the defendant in the well reasoned opinion of the Appellate Court" where it was determined that such a charge was not erroneous. Id., 61. In *State* v. *DePastino*, 228 Conn. 552, 572–73, 638 A.2d 578 (1994), the Supreme Court again adhered to its conclusion that an unpreserved claim, attacking a jury charge that included within it language that characterized a reasonable doubt as "a doubt for which a valid reason can be assigned," is not constitutionally defective.

Thus, in the two cases decided since *Campbell*, the Supreme Court has yet to create a requirement that a reasonable doubt charge include an instruction that affirmatively states that no reason need be given in a juror's mind for the reasonable doubt that the juror entertains. The defendant's claims to the contrary are unpersuasive.

II

The defendant next asserts that the trial court improperly permitted testimony that the defendant's sister lived next to the property where the gun allegedly used in the shooting was found. The defendant posits that this testimony was (1) irrelevant, or (2), if relevant, more prejudicial than probative. We disagree with both claims.

Certain additional facts are necessary to a proper resolution of this issue. Clary testified that after Gooch had been identified by the victim as one of the perpetrators and had been taken into custody by the Waterbury police, Gooch told the police where the gun that had been displayed by Hurtle had been abandoned. As a result of receiving that information, Clary went to the premises of the Waterbury Printing Company on Willow Street and recovered the gun from the place to which Gooch had directed him. The state then attempted to establish that the defendant's sister lived next door to those premises. The defendant objected to this evidence on two grounds, asserting first that it was irrelevant and second, that even if relevant, it was highly prejudicial. The trial court rejected both grounds and permitted the testimony.

### A

The defendant's first assertion is that the testimony concerning the defendant's sister was irrelevant. We disagree.

"Our examination of the question of whether the trial court properly admitted into evidence testimony that the defendant claimed lacked relevance must be examined against the backdrop of what has long been our law, that the trial court is vested with broad discretion in resolving questions of relevancy. *State* v. *Santiago*, 224 Conn. 325, 326, 618 A.2d 32 (1992); *State* v. *Maxwell*, 29 Conn. App. 704, 715, 618 A.2d 43 (1992), cert. denied, 225 Conn. 904, 621 A.2d 287 (1993)." *State* v. *Ulen*, 31 Conn. App. 20, 28, 623 A.2d 70, cert. denied, 226 Conn. 905, 625 A.2d 1378 (1993). "[E]vidence is relevant if it has a tendency to establish the existence of a material fact. *State* v. *Mastropetre*, 175 Conn. 512, 517, 400 A.2d 276 (1978). One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone

or in connection with other facts, renders the existence of the other either certain or more probable. Unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in the determination of the issue. . . . No precise and universal test of relevancy is furnished by the law, and the question must be determined in each case according to the teachings of reason . . . . *State* v. *Sharpe*, 195 Conn. 651, 659, 491 A.2d 345 (1985). *State* v. *Woodson*, 227 Conn. 1, 16, 629 A.2d 386 (1993)." (Internal quotation marks omitted.) *State* v. *Wieler*, 35 Conn. App. 566, 576–77, 645 A.2d 1032, cert. denied, 231 Conn. 933, 649 A.2d 256 (1994).

" 'Evidence is not rendered inadmissible simply because it is not conclusive. It is admissible if it tends to support a relevant fact even in a slight degree, so long as it is not prejudicial or merely cumulative.' " *State* v. *Fleming*, 36 Conn. App. 556, 566, 651 A.2d 1341 (1995), quoting *State* v. *Morrill*, 197 Conn. 507, 548, 498 A.2d 76 (1985). " 'The governing principle with respect to this issue is that relevant evidence is admissible unless excluded for some reason of policy. "Evidence is admitted, not because it is shown to be competent, but because it is not shown to be incompetent." *State* v. *Sharpe*, [supra, 195 Conn. 659]; *State* v. *Schaffer*, 168 Conn. 309, 317, 362 A.2d 893 (1975).' *State* v. *Silveira*, 198 Conn. 454, 474–75, 503 A.2d 599 (1986)." *State* v. *Finley*, 34 Conn. App. 823, 829, 644 A.2d 371, cert. denied, 231 Conn. 927, 648 A.2d 880 (1994).

Here, the defendant was charged with participating in a series of crimes that involved the use of a gun to force the victim into the automobile and later to wound him. There was direct evidence of the participation by the defendant in the commission of these crimes. There was also direct evidence of the fact that the gun that was used in the perpetration of these offenses was

found on property adjacent to the building in which the defendant's sister lived. Thus, there was evidence before the jury that the defendant had been a participant in these offenses in which the gun that was found had played an integral part. The evidence that the defendant's sister lived at the property adjacent to that on which the gun was found one day after the crime, permitted the jury to infer that the defendant was familiar with the area and provided a nexus between the gun used and the area in which it was found. Thus, the trial court did not abuse its considerable discretion in admitting testimony that the defendant's sister lived next door to the property where the gun was abandoned.

## B

As a second string to his bow as to the claimed inadmissibility of this testimony, the defendant asserts that the prejudicial effect of the evidence outweighed its probative value. We are unpersuaded.

Our Supreme Court has outlined four situations where the probative value of evidence may be outweighed by its prejudicial effect on the defendant: "(1) where the facts offered may unduly arouse the jury's emotions, hostility or sympathy, (2) where the proof and answering evidence it provokes may create a side issue that will unduly distract the jury from the main issues, (3) where the evidence offered and the counterproof will consume an undue amount of time, and (4) where the defendant, having no reasonable ground to anticipate the evidence, is unfairly surprised and unprepared to meet it." (Internal quotation marks omitted.) *State* v. *Greene*, 209 Conn. 458, 478–79, 551 A.2d 1231 (1988), quoting *State* v. *DeMatteo*, 186 Conn. 696, 702–703, 443 A.2d 915 (1982). " 'Prejudice is not measured by the significance of the evidence that is relevant but by the impact of that which is extraneous.' "

*State* v. *Battista*, 31 Conn. App. 497, 515, 626 A.2d 769, cert. denied, 227 Conn. 907, 632 A.2d 696 (1993), quoting *State* v. *DeMatteo*, supra, 703. "The trial court, if called upon to rule on a question of prejudice, must determine whether the adverse impact of the challenged evidence outweighs its probative value." *State* v. *Crafts*, 226 Conn. 237, 255, 627 A.2d 877 (1993).

While the defendant does not clearly set forth under which of the four categories he claims that the testimony as to the location of the defendant's sister's home would fall, we do not believe that it falls within the scope of any of the categories listed by the Supreme Court in *State* v. *Greene*, supra, 209 Conn. 478–79.

The evidence that the defendant's sister lived next to the property where the gun was found the day following the crime, permitted the jury, as we have already stated, to infer that the defendant had knowledge of the area and provided a nexus between the defendant and the area where the gun was found. Given the fact that the defendant had been directly identified as one of the participants in the crimes, the evidence as to his familiarity with the area where the gun was a factor that the jury could determine corroborated his participation. The trial court did not abuse its considerable discretion in determining that the evidence was more probative than prejudicial.

The trial court properly admitted Clary's testimony that the defendant's sister lived next door to the property on which the gun allegedly used in the crime was found.

### III

The defendant next asserts that the trial court improperly failed to suppress from use as evidence the nine millimeter gun recovered by Clary from the Waterbury Printing Company property. In support of this

claim, the defendant asserts that (1) the identification process was impermissibly tainted by the actions of the assistant state's attorney, and (2) the state failed to lay a proper foundation for the admission of the gun by showing an unbroken chain of custody. We disagree.

## A

The defendant asserts that the victim's identification of the gun was tainted by an unnecessarily suggestive prior identification. In support of this claim, the defendant relies on *State* v. *Gordon*, 185 Conn. 402, 412–17, 441 A.2d 119 (1981), cert. denied, 455 U.S. 989, 102 S. Ct. 1612, 71 L. Ed. 2d 848 (1982).[9] We reject the assertion made by the defendant that the same rule that applies to the identification of a defendant as the person who committed a crime applies to the admissibility of an inanimate object.

Certain additional facts are necessary to an understanding of our resolution of this issue. At trial, the victim identified the gun as the one that was pointed at him by Hurdle during his kidnapping. The victim stated that Gooch had shown him this gun on several occasions at the house where both the victim and Gooch were living prior to the abduction. The victim testified that he had handled the gun himself and was further able to identify the gun from its size, shape, color, markings and handle. He also testified that although there were now initials or numbers on the weapon, he did not recall seeing those on the gun when he had handled it at Gooch's house or when it was used by Hurdle during the commission of the crime.

---

[9] *State* v. *Gordon*, supra, 185 Conn. 413, holds that " '[i]n determining whether identification procedures violate a defendant's due process rights, the required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on examination of the "totality of the circumstances." ' "

It was further revealed that, prior to trial, the victim described the gun to the assistant state's attorney and attempted to draw a picture of the weapon. Several days later, the assistant state's attorney showed the victim a photograph of a gun and the victim identified it as a picture of the gun that he had been shown by Gooch and that was displayed by Hurdle at the time of the abduction. The photograph also contained the names of Gooch and the victim as well as a date and a case number. The photograph was turned over to the defendant and was offered in evidence by him.

On May 27, 1992, the defendant moved to suppress the gun that had been previously admitted as a full exhibit claiming that the testimony adduced subsequent to the gun's being admitted into evidence indicated that the identification of the gun by the victim was impermissibly tainted by his having been shown a photograph of the gun that contained not only the gun but the names of the victim and Gooch as well as the case number and the date. The defendant claimed that he was entitled to suppression of the gun on due process grounds.[10] The trial court rejected the defendant's claim positing that the gun was admitted into evidence because of the certitude of identification by the victim on the basis of his prior knowledge of the gun. The trial court determined that the identification of the gun was, therefore, reliable.

Our research, as did that of the defendant, fails to disclose the existence of a case where the same rule

---

[10] In the course of the proceeding the defendant indicated that his "motion . . . to suppress the identification of the gun, state's exhibit K, [was based] on due process grounds . . . ." He further argued that it was his position "that the showing of such a photograph to [the victim] would be tantamount to and similar to conduct of police, if police were to show a photograph of one person . . . to a person. It has the same effect as far as tainting the identification of the person here, it's tainting the identification of the gun. I don't see any difference, although I couldn't find any cases between the issue of identification of a person instead of identification of [a] gun."

was applied to the identification of an exhibit as was applied to the identification of a person. The genesis of the rule requiring that the identification of persons accused of crime be free of the taint of a suggestive procedure comes from an acknowledgment that identification by an eyewitness of a person as the one who perpetrated the crime "is peculiarly riddled with innumerable dangers and variable factors which might seriously, even crucially, derogate from a fair trial." *United States* v. *Wade*, 388 U.S. 218, 228, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967). It further stems from an understanding that " '[i]t is a matter of common experience that, once a witness has picked out the accused at the line-up, he is not likely to go back on his word later on, so that in practice the issue of identity may (in the absence of other relevant evidence) for all practical purposes be determined there and then, before the trial.' " Id., 229. Moreover, the issue of identification of the defendant as the perpetrator of the crime is an element of all offenses and thus impacts directly on a defendant's right to due process of law since an impermissibly suggestive identification procedure may be conducive to an irreparable mistaken identification. *State* v. *Gordon*, supra, 185 Conn. 412. We decline to elevate the identification of an inanimate object to one of constitutional magnitude because in our view, the ordinary rules governing the admissibility of objects afford the defendant adequate protection.[11]

## B

The defendant also claims that the trial court improperly admitted the gun as a full exhibit without requir-

---

[11] We note again that "[d]ue process is not to be regarded as a giant constitutional vacuum cleaner which sucks up any claims of error [that suggest themselves to the ingenuity of counsel]." (Internal quotation marks omitted.) *State* v. *Haggood*, 36 Conn. App. 753, 773 n.8, 653 A.2d 216 (1995), quoting *State* v. *McMurray*, 217 Conn. 243, 253, 585 A.2d 677 (1991); *State* v. *Kurvin*, 186 Conn. 555, 564, 442 A.2d 1327 (1982).

ing the state to establish an unbroken chain of custody. The defendant claims that a break in the chain of custody occurred when the state failed to call Gooch to testify as to the information that he gave to Clary that in turn led Clary to recover the gun. We disagree.

A trial court is vested with wide and liberal discretion in determining whether to admit or exclude physical evidence. *State* v. *Pollitt*, 205 Conn. 61, 88, 530 A.2d 155 (1987); *State* v. *Piskorski*, 177 Conn. 677, 699, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979). In order to be admitted into evidence, "[a]n object connected with the commission of a crime must be shown to be in substantially the same condition as when the crime was committed . . . ." *State* v. *Pollitt*, supra, 88. "The court must consider the nature of the article, the circumstances surrounding its preservation and custody and the likelihood of intermeddlers tampering with it in making its determination . . . there is no rule which requires the state to produce as witnesses all persons who were in a position to come into contact with the substance sought to be introduced into evidence." (Internal quotation marks omitted.) *State* v. *Piskorski*, supra, 697. "The state's burden is satisfied by showing that the exhibit is the actual item in question . . . and that there is a reasonable probability that the item has not been changed in any important respect." (Citation omitted.) *State* v. *Rumore*, 28 Conn. App. 402, 410, 613 A.2d 1328, cert. denied, 224 Conn. 906, 615 A.2d 1049 (1992); see also *State* v. *Greene*, supra, 209 Conn. 479.

No claim was made by the defendant that the gun had been tampered with nor was any evidence offered to promote such a theory. Additionally, the defendant did not claim that the gun that was introduced into evidence was not the gun found behind the printing company after Gooch had disclosed where it had been abandoned. The trial court found that the victim had

seen the gun before the crime in the possession of Gooch; it also determined that the victim had identified several guns from certain defendant's exhibits that appeared similar to the one that he identified as the one used in the commission of these crimes. The trial court determined that the gun was properly admitted "because of the witness' certitude, the witness' prior knowledge of—his prior intimacy with the gun and the fact that the gun is something that—being passed from party to party doesn't change its shape and it doesn't change its format. So I think that the state has shown an adequate basis for the identification of the gun."

We conclude that at the time that the gun was admitted into evidence a sufficient foundation had been laid for its admission and that the trial court applied the proper standard in admitting it into evidence and in denying the defendant's subsequent motion to suppress.[12]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[12] We also note that the argument made by the defendant attacking the identification of the gun by the victim is one that is more properly addressed to the weight to be afforded to the evidence by the trier of fact and not to its admissibility. The determination of the credibility of a witness and the weight to be afforded to his or her testimony is an issue for the trier of fact. *State* v. *Butler*, 36 Conn. App. 525, 530, 651 A.2d 1306 (1995).