STATE OF CONNECTICUT *v.* JULIO ABREU
(12323)

DUPONT, C. J., FOTI and SPEAR, Js.

Argued March 25—decision released June 7, 1994

*Stephanie Hack Gordon,* special public defender, for the appellant (defendant).

*Pamela S. Meotti,* deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, *Richard Morelli,* supervisory assistant state's attorney, and *Jennifer Sanders,* deputy assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes

§ 21a-278 (b).[1] He claims that the trial court improperly permitted expert testimony that went to the ultimate issue of the defendant's intent to sell narcotics.[2] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On June 15, 1990, at approximately 12:15 a.m., members of the Hartford police department were conducting an undercover drug surveillance in the area of Broad and Jefferson Streets in Hartford. The officers, James Howard and Steven O'Donnell, were there as a result of complaints concerning drug dealing at that location, and were dressed in civilian clothes. After parking their car on Madison Street, the officers exited the car and positioned themselves in a driveway between two buildings in order to observe the intersection. They observed a tall, dark-skinned Hispanic male clothed in a dark shirt and a hat, conducting activity that they considered to be dealing drugs. The male, later identified as the defendant, would stop and talk to a person who was walking or driving on Broad Street and then walk to the rear of a nearby building, stoop down and take something from a brown bag. He would then return and exchange a small package for money. Four such dealings were observed.

---

[1] The jury also returned a verdict of guilty of possession of narcotics in violation of General Statutes § 21a-279 (a). The trial court dismissed this charge.

[2] The defendant also raised a second issue claiming that the trial court improperly instructed the jury that a reasonable doubt "is a doubt for which you can, in your own minds, conscientiously find a reason." Counsel for the defendant indicated at oral argument that this claim would not be addressed in view of the recent decisions by our Supreme Court concerning the cases cited in her brief—*State* v. *Leonard*, 31 Conn. App. 178, 623 A.2d 1052, cert. granted, 226 Conn. 916, 628 A.2d 985 (1993), motion to dismiss appeal granted, January 7, 1994, and *State* v. *Johnson*, 29 Conn. App. 584, 590, 617 A.2d 174 (1992), appeal dismissed, 228 Conn. 59, 634 A.2d 293 (1993) (both cases declining review under *Golding* and finding proper instruction describing reasonable doubt as "a doubt for which a valid reason may be assigned"). The defendant essentially conceded that

Thereafter, the officers observed the defendant pick up the brown bag and begin walking north on Broad Street. They ran to their car and, after losing sight of the defendant for about two minutes, drove up behind him and exited their car. They announced that they were police officers and ordered the defendant to stop. The defendant ran north on Broad Street with O'Donnell pursuing on foot and Howard proceeding by car. O'Donnell then observed the defendant throw a brown bag toward the entrance of a building. This hand movement was also observed by Howard who left the car and retrieved a brown paper bag containing a ball of what was later determined to be white powder cocaine wrapped in cellophane and weighing 2.2 grams. The defendant was apprehended and found to be in possession of $71.

The defendant claims that the trial court improperly permitted the testimony of an expert witness, Detective Michael Manzi, that went to the ultimate issue in the case, the defendant's intent to sell narcotics. The defendant argues that this issue is exclusively within the jury's province and also that the testimony violated General Statutes § 54-86i.[3]

The state called Manzi and sought his testimony as an expert witness. The defendant did not challenge Manzi's qualifications to testify as an expert witness, nor is that an issue on appeal. The defendant did object

these cases are controlling on the second issue. We agree and find the slight difference in the wording of the instruction in the present case to be of no significance. The instruction was not improper.

[3] General Statutes § 54-86i provides: "No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto, except that such expert witness may state his diagnosis of the mental state or condition of the defendant. The ultimate issue as to whether the defendant was criminally responsible for the crime charged is a matter for the trier of fact alone."

to Manzi's expert testimony under § 54-86i.[4] The court allowed the testimony because of the state's representation that Manzi would not be testifying as to his belief or opinion that the defendant possessed narcotics with the intent to sell, but rather only as to whether certain behavior would be consistent with the sale of narcotics.

The state inquired of Manzi as follows: "Again, [Detective] Manzi, you have the exhibits in front of you. Showing you . . . exhibit three . . . which is a tied cellophane of white powder cocaine in a brown wrapper. If you were to find that item on an individual [of whom] you had been [conducting surveillance], street [surveillance], and whom you observed making hand passes or exchanges with passersby, both walk-up and passersby in vehicles, and you saw exchanges of small objects for U.S. currency, would you, based on your training and experience, feel that possession of that item was consistent with the sale of narcotics?"[5] The witness replied: "Unequivocally, it would lead me to believe that the person involved with this was dealing drugs on the street."

The state inquired further of Manzi: "Now, if I were to tell you that on that person, exhibit two, the U.S. currency, was also found on that individual after observing these exchanges, what, if anything, would that do to the opinion that you just gave?" The witness responded: "Certainly corroborate the fact that, yes, the person was involved in dealing narcotics on the street."

---

[4] The defendant, however, neither moved for a mistrial nor sought a curative instruction.

[5] The defendant objected to the question as originally posed and was overruled, but the court requested counsel to rephrase the question. The state repeated the question as set forth herein in virtually identical language, omitting reference to Broad and Jefferson in the city of Hartford as the point of the surveillance.

Although a trial court should have broad discretion in the matter of the admission of expert testimony concerning the sale of illicit drugs; *State* v. *Walton,* 227 Conn. 32, 59–60, 630 A.2d 990 (1993); and while a trier of fact may need expert assistance on the precise question on which it must pass; *State* v. *Vilalastra,* 207 Conn. 35, 41, 540 A.2d 42 (1988); "the ultimate issue of the defendant's intent [to sell narcotics] is a question for the trier of fact to consider without expert testimony on this precise issue. See General Statutes § 54-86i." *State* v. *Campbell,* 225 Conn. 650, 656, 626 A.2d 287 (1993). Intent, however, may be inferred from conduct. *State* v. *Francis,* 228 Conn. 118, 128, 635 A.2d 762 (1993).

An expert witness " 'may testify that certain behavior by a defendant or his possession of particular items is conduct similar to that engaged in by the typical drug dealer.' " *State* v. *Walton,* supra, 227 Conn. 60. "[I]t is improper to solicit a particularized opinion as to the defendant's use and possession of items or drugs found; however, it is wholly appropriate to inquire into the custom and practice of narcotics traffickers generally." *State* v. *Nelson,* 17 Conn. App. 556, 566, 555 A.2d 426 (1989).

Neither the questions posed by the state nor Manzi's answers could have led the jury to conclude that Manzi was giving his opinion, as an expert witness, that *this defendant* was either selling drugs or had the intent to sell drugs. Because Manzi was neither an arresting officer nor at the scene of the surveillance, the questions were posed in a general manner and in a hypothetical fashion—"[i]f you were to find that item on an *individual* [of whom] you had been [conducting surveillance]"; "if I were to tell you that on that *person* . . . ." (Emphasis added.) Because the questions asked refer to an "individual," a hypothetical person that Manzi was theoretically observing on the street, they

do not go to the ultimate issue of fact; rather, they ask the expert to testify about a certain pattern of conduct typical to the sale of narcotics or consistent with an intent to sell. Neither question was designed to elicit a conclusion that this defendant possessed the narcotics with the intent to sell them. Further, Manzi's answers did not go beyond the scope of the questions. His answers referred only to "the person," meaning the person in the hypothetical.

It was properly left to the jury to determine whether the actions of the defendant, as testified to by Howard and O'Donnell, fit the pattern described by Manzi as an expert witness. *State* v. *Vilalastra,* supra, 207 Conn. 44. Whether the facts proven and the reasonable inferences that could be drawn from those facts were sufficient to prove that the defendant possessed the narcotics with the intent to sell was the ultimate issue for the jury to decide.[6]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] Because we conclude that the testimony was not improper as it did not go directly to an ultimate issue of fact in this case, we need not determine whether that testimony also specifically violated General Statutes § 54-86i.