## STATE OF CONNECTICUT *v.* RONALD M. THOMPSON (AC 21436)

Schaller, Mihalakos and Bishop, Js.

Argued March 25—officially released July 9, 2002

*James O. Ruane*, special public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Louis J. Luba, Jr.*, assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Ronald M. Thompson, appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1), risk of injury to a child in violation of General Statutes § 53-21 and two counts of failure to appear in the first degree in violation of General Statutes § 53a-172.[1] On appeal,

[1] On July 13, 2000, the defendant was sentenced to serve eight years for sexual assault in the second degree, eight years for risk of injury to a child to be served concurrently with the first conviction, one year for failure to appear in the first degree to be served consecutively and one year for failure to appear in the first degree to be served concurrently with the third conviction. The defendant received, therefore, a total effective sentence of

the defendant claims that the court improperly (1) admitted constancy of accusation evidence, (2) instructed and misled the jury concerning the permissible uses of the victim's prior out-of-court statements, (3) augmented his sentence because he chose to stand trial and (4) admitted certain expert testimony. We affirm the judgment of the trial court.

The jury reasonably could have found the following relevant facts. At the time of the underlying events, the victim[2] was a minor. The victim's residence was proximate to that of the defendant. On a warm day sometime in 1986, the victim approached the defendant outside his home as he worked on his car. She asked him if she could help him work on the car. The defendant agreed.

At some point, the victim asked for something to drink, and the defendant invited her inside his home for a glass of water. Once inside, the defendant gave the victim some water. No one else was in the defendant's house, and no one else knew that the victim was there. The defendant then offered to show the victim some pictures he had drawn, which he kept downstairs in his bedroom. The defendant told the victim that everything would be okay and led her to his bedroom in the basement of the house. The defendant closed the bedroom door. The victim then sat down on the defendant's water bed.

The defendant then pulled the victim's pants down and began touching her on her thighs and her vagina. The victim became fearful and started crying, but the defendant placated her by repeatedly reassuring her

nine years of incarceration followed by four years of parole. The defendant also was ordered to receive sex offender and substance abuse counseling and treatment, and to register as a sex offender for ten years.

[2] In the spirit of General Statutes § 54-86e, and to protect the victim's legitimate privacy interests, neither the victim's name nor those of her friend and her family will be mentioned in this opinion.

that everything was okay and normal. The defendant then digitally penetrated the victim's vagina, licked her thighs, performed cunnilingus on her and attempted to vaginally penetrate her with his penis. Sometime during the attack, the defendant lay on top of the victim to one side and kept one leg between her legs.

The defendant reassured the victim again after the assault. The defendant then led the victim upstairs to leave and told her not to speak to anyone about the encounter. He also threatened that if anyone knew about it, they would think she was a whore and he would kill her. Now frightened, the victim ran from the defendant's house to the home of a family friend nearby.

The victim told her friend, who knew the defendant, what had happened. The victim's friend told her that the defendant's actions were wrong and to tell her parents. The victim did not speak of the incident to her parents or the police, however, because she was scared and ashamed that she had not stopped the defendant's assault. The victim also begged her friend not to tell anyone because she feared that harm might come to her or her family. Nevertheless, about six months later, the victim's friend reported the incident to the victim's sister, who kept it secret. On September 25, 1988, the victim's mother became aware of the incident when the victim's sister brought it to light during a family conversation about threats the defendant had made recently against the victim, her family and her friend. The victim ran from the room and locked herself in her room and went inside her closet.

The victim's mother called the police, and the victim reported the assault that night to the police and then to her mother. Following the victim's report, the victim's mother also reported subsequent incidents between the victim and the defendant, in which he harassed the victim about the assault by calling her a whore and

telling her no one would believe her. Additional facts and procedural history will be provided as necessary.

I

As an initial matter, we note that the defendant conceded at oral argument that each of the first three issues before us was not preserved at trial. Although the defendant seeks review on appeal under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[3] and the plain error doctrine,[4] we decline to review his first three claims.

A

The defendant first claims that the court improperly admitted constancy of accusation evidence from three witnesses. We decline to review his claim.

[3] In *Golding*, our Supreme Court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

[4] "[T]he plain error doctrine, which is now codified at Practice Book § 60-5, provides in relevant part: 'The court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law. . . . Plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Citation omitted; internal quotation marks omitted.) *State* v. *Trotter*, 69 Conn. App. 1, 11–12, 793 A.2d 1172, cert. denied, 260 Conn. 932, 799 A.2d 297 (2002). "Furthermore, even if the error is so apparent and review is afforded, the defendant cannot prevail on the basis of an error that lacks constitutional dimension unless he demonstrates that it likely affected the result of the trial." (Internal quotation marks omitted.) *State* v. *Lindstrom*, 46 Conn. App. 810, 817, 702 A.2d 410, cert. denied, 243 Conn. 947, 704 A.2d 802 (1997).

Conceding that this issue was not preserved at trial, the defendant requests *Golding* and plain error review. The record before us is adequate for review under the first prong of *Golding*. The claim fails to meet the second prong of *Golding*, however, because it is not of constitutional magnitude. See footnote 3. "In Connecticut, it is well established that the constancy of accusation doctrine does not violate a defendant's sixth amendment right to confrontation." *State* v. *Romero*, 59 Conn. App. 469, 480, 757 A.2d 643, cert. denied, 255 Conn. 919, 763 A.2d 1043 (2000). Our Supreme Court has ruled that this is a "fundamental tenet of confrontation clause jurisprudence, namely, that the clause is not violated by admitting a declarant's out-of-court statements, *as long as the declarant is testifying as a witness and subject to full and effective cross-examination.*" (Emphasis in original; internal quotation marks omitted.) *State* v. *Troupe*, 237 Conn. 284, 292, 677 A.2d 917 (1996). Although the defendant concedes that point, he argues that the testimony of three constancy of accusation witnesses exceeded the limits set by *Troupe* by injecting details of the sexual assault. See id., 304–305. That evidentiary claim, however, admittedly was unpreserved at trial and may not now be pursued. Further, the record clearly shows that the victim testified and was available for full and effective cross-examination. The defendant attempts to "put a constitutional tag on a nonconstitutional evidentiary ruling." (Internal quotation marks omitted.) *State* v. *Romero*, supra, 480. That we will not do.

Similarly, the defendant seeks plain error review to no avail. He alleges that admitting the challenged constancy of accusation testimony was blatant, reversible error that affects public confidence in the judicial proceedings because the evidence prejudicially exceeded the bounds permitted under our Supreme Court's decision in *Troupe* concerning such testimony. Upon review

of the entire record, we conclude that plain error review is unwarranted. The defendant also has failed to show that the court's admission of the challenged testimony was so obviously erroneous that it affected the fairness or integrity of or public confidence in the judicial proceedings. See footnote 4. The defendant has failed to show that this is one of those extraordinary situations where not granting the requested relief will result in manifest injustice. See *State* v. *Trotter*, 69 Conn. App. 1, 11–12, 793 A.2d 1172 (explaining application of plain error doctrine), cert. denied, 260 Conn. 932, 799 A.2d 297 (2002). Even if we were to grant plain error review for this nonconstitutional claim, the defendant could not show that the alleged errors likely would have affected the result of the trial. See *State* v. *Lindstrom*, 46 Conn. App. 810, 817, 702 A.2d 410, cert. denied, 243 Conn. 947, 704 A.2d 802 (1997). Accordingly, we also decline to review the defendant's claim under the plain error doctrine.

B

The defendant next claims that the court improperly instructed and misled the jury concerning the permissible uses of the victim's prior out-of-court statements. The defendant argues that the court, having admitting constancy of accusation evidence, should have instructed the jury that the evidence could be used to impeach the victim's credibility. We decline to review that issue.

Practice Book § 42-16 provides in relevant part: "An appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. . . ." The record reveals that defense counsel twice noted that she had no exception to the court's instruction to the

jury. In fact, defense counsel noted that she "followed [the court's instruction] very carefully, and [the instruction] came very strictly from what my understanding of what an appropriate charge would be. We have no exception." Additionally, the record reveals that the defendant failed to request that the court charge the jury that constancy of accusation evidence could be used to impeach the victim's credibility.

The defendant also failed to brief adequately his claim for *Golding* or plain error review.[5] Even had he done so, the defendant's claim would fail under the second prong of *Golding* because the issue is evidentiary and not constitutional in nature. See footnote 3; *State* v. *Ali*, 233 Conn. 403, 422–23, 660 A.2d 337 (1995) (concluding that challenged jury instruction on uses of out-of-court statements did not, as presented, raise constitutional claim); see also *State* v. *Liebowitz*, 65 Conn. App. 788, 805 n.7, 783 A.2d 1108 (*Golding* review would be declined on claim if defendant treated issue as evidentiary and it was patently nonconstitutional), cert. denied, 259 Conn. 901, 789 A.2d 992 (2001). Moreover, plain error review again is unwarranted.[6] Accordingly, we decline to review this meritless claim.

[5] "[F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." (Internal quotation marks omitted.) *Baris* v. *Southbend, Inc.*, 68 Conn. App. 546, 550–51, 791 A.2d 713 (2002). The defendant failed to raise distinctly either *Golding* or plain error review in relation to his claim, although he did request plain error review at oral argument. He also does not analyze the issue in constitutional or plain error terms.

[6] We note that unlike the circumstances in *State* v. *Ali*, supra, 233 Conn. 417–25, the court here instructed the jury that the constancy of accusation evidence may be used to either corroborate or not corroborate the victim's

## C

The defendant next claims that certain comments made by the court during sentencing proceedings show that it improperly augmented his sentence because he chose to stand trial. The defendant's claim is deemed abandoned and is otherwise meritless.

Although the defendant has provided an adequate record for our review, he has conceded that his claim was not preserved at trial, and he does not distinctly request *Golding* or plain error review or provide adequate legal analyses. See footnote 5. Even had the defendant properly requested *Golding* review, his claim would fail to satisfy the third prong of *Golding* because he has not shown that the alleged constitutional violation clearly exists and clearly deprived him of a fair trial. He also has failed to demonstrate that this is an extraordinary situation for which plain error review is required. Further, even if the defendant had preserved the issue at trial, he has not met his burden of proof, in view of the totality of the circumstances, to demonstrate that the court clearly abused its broad discretion. See *State* v. *Kelly*, 256 Conn. 23, 80–83, 770 A.2d 908 (2001). Indeed, nothing in the record suggests that the court lengthened the defendant's sentence because he

in-court testimony. The court instructed the jury that "[t]he testimony as to out-of-court statements of the victim is to be considered by you in determining the weight and credibility of the victim's testimony. . . . To the extent you find that what [the victim] has said outside the courtroom is consistent with her testimony as given in court, you may find her testimony in court to be corroborated and supported. To the extent that you find what she has said outside the courtroom is inconsistent with her testimony in court, you may consider such inconsistency . . . in evaluating her testimony . . . in the courtroom." The court then instructed the jury that "[i]n determining whether these out-of-court statements by [the victim] are corroborated *or not corroborated* . . . you should consider all the circumstances under which they were made . . . ." (Emphasis added.) Prior to that instruction, the court also instructed the jury that it could accept all, some or none of a particular witness' testimony and that the same rule applied if it appeared that a witness had testified falsely or inconsistently with a prior out-of-court statement.

chose to maintain his claim of innocence and to exercise his constitutional right to a jury trial. Accordingly, we deem the issue abandoned and otherwise without merit.

## II

The defendant's final claim is that the court improperly admitted, despite his timely objection, expert testimony regarding delayed reporting of sexual abuse. Paralleling his objection at trial,[7] the defendant supports

[7] As revealed by the trial transcript, defense counsel objected to the admission of the expert testimony, and the court ruled on that objection as follows:

"[Defense Counsel]: Your Honor, I'm going to object.

"The Court: Object to what?

"[Defense Counsel]: I'm going to object to the use and the admissibility of this witness' testimony as promulgated by the state.

"The Court: Well, are you objecting to her testimony as an expert, an expert permitted by the court to render an opinion in that field in which she claims to have expertise?

"[Defense Counsel]: I'm objecting on several grounds. One of them . . . is that I don't think that her field is an area of expertise that's required in this case. I also don't believe that she has any factual information to add to this case, and I don't believe that what she's going to testify to is something that is within the necessity of an expert opinion. I believe that it's within common understanding. I think Your Honor has been alerted to the issue.

"The Court: Do you want to be heard?

"[Prosecutor]: Yes, Your Honor. I would claim it. I think that it's something that is not within the usual realm of understanding and that we do not have the experience that she has that there are common beliefs, but as we know, common beliefs may be false and an expert is necessary in this field.

"The Court: Well, the objection is—do you want to be heard further?

"[Defense Counsel]: Briefly, Your Honor. It's very much a matter of discretion whether the court may allow expert testimony. The pins of analysis are that the witness has a special skill or knowledge directly applicable to a matter on the issue in the case, and the other issue is whether or not that skill or knowledge is not common to the average person. I have argued before, Your Honor, that the subject matter is something that is well within the common understanding of persons if they take the testimony to be credible. In addition, I can't imagine that—I think that since she does not have insight into the particulars of this case, I believe that her testimony would be overly prejudicial and that—

"The Court: Well, you heard of hypothetical questions, have you not?

"[Defense Counsel]: Yes, I have, Your Honor.

"The Court: Based on evidence that's already been submitted in a trial?

"[Defense Counsel]: Yes, Your Honor.

"The Court: And you don't think that that would be proper in this instance?

his claim with several arguments. The defendant contends that the expert was clearly not qualified to testify about delayed reporting, that her expertise lies elsewhere and that she has no special skill, knowledge or hands-on experience directly applicable to the subject. The defendant further contends that the expert improperly testified as to the credibility of the victim in the present case. Finally, the defendant asserts that the testimony was improper because, instead of aiding the jury in its function, the testimony served only to confuse the jury. We disagree.

The following additional facts and procedural history are relevant to our determination of the defendant's claim. At trial, the state called Diane Edell, a trainer and consultant on issues of child sexual abuse, to testify as to why a victim might delay the reporting of a sexual assault. Edell testified that her expertise was derived in part from her position as the medical director of a hospital's pediatrics department for six and one-half years. Edell noted that one of the department's functions was to evaluate children who made allegations of sexual abuse. Edell testified that when she was with the department, she performed more than 400 forensic interviews, or "interviews . . . of children who had made allegations of sexual abuse." Edell also stated that she screened "literally thousands of calls from state agencies and police departments making requests for [such evaluations]." Additionally, Edell testified that she underwent intensive training in her area in California and Oregon, attended approximately forty related conferences and conducted training sessions concern-

---

"[Defense Counsel]: In that I think it's prejudicial effect would outweigh any probity.

"The Court: Well, you can address any question posed by the state's attorney that you feel . . . is prejudicial to an extreme such that it outweighs any probative value, but I'm satisfied with the qualifications that I've heard and the general objection that you make to the testimony of this witness is overruled."

ing the assessment of child sexual abuse allegations for supervisors within the department of children and families. Finally, Edell testified that she previously had been an expert witness in court proceedings regarding other children's issues, and her qualifications include both a master's degree in social work and a master's degree in public health. The state offered Edell as "an expert in the area of forensic interviews and child sexual abuse investigations." Following a voir dire of Edell, the defendant objected to the admission of her testimony on the grounds that it was overly prejudicial, she had no relevant special skill or knowledge and the testimony commented on something commonly known to the layperson. The court, noting that it was satisfied with the qualifications of the expert witness, overruled the defendant's objection.

On direct examination, Edell testified that delayed reporting occurs when "a child who is engaged in an act of some sexual contact and does not immediately tell." Edell explained that children might delay reporting sexual abuse due to fear of an implied or express threat of reprisal against them or their families, or that they might be taken away from their families. She noted that some children fear that reporting will disrupt the family or cause them to be punished or stigmatized. Edell further stated that delay might result from an older child's shame or embarrassment concerning the assault. Moreover, Edell testified that delay might result from children assuming the blame for the assault or because they have a relationship with their attacker. When presented with a hypothetical question encompassing the facts of this case, Edell testified that those facts could be considered a delayed reporting situation. She also stated that the most likely person for a child to tell is a friend and that this report often does not get relayed to anyone else. Edell testified that often, disclosure of an assault is accidental and occurs

when a child starts crying, blurts it out in a fight or is overheard telling someone else who does not act on the report. Edell noted that it generally is accepted that more than 25 percent of persons abused once before the age of eighteen do not report the incident to anybody until well after the incident, with 50 percent of those persons not reporting until five years after the incident. Finally, she noted that it is considered atypical for children to report an assault immediately "to somebody who [is] able to do something about it." The witness also confirmed, in response to a question from the court, that there is nothing unusual or uncommon about a child's reporting an assault to a friend or peer promptly, but not to a parent or close relative for as long as two years.[8]

Our standard of review concerning evidentiary rulings is well established. "The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *State* v. *Vega,* 259 Conn. 374, 392, 788 A.2d 1221 (2002). "Concerning expert testimony specifically, we note that the trial court has wide discretion in ruling on the admissibility of expert testimony and, unless that discretion has been

---

[8] We note as well that Edell testified that she cochairs a subcommittee of the governor's task force on justice for abused children and that she still occasionally engages in forensic interviews of children. Further, during cross-examination, Edell explained that she currently trains employees of the department of children and families on the common characteristics of child abuse, why children disclose or do not disclose such abuse, and other aspects related to children, families and offenders in the context of child sexual abuse.

abused or the ruling involves a clear misconception of the law, the trial court's decision will not be disturbed. . . . Expert testimony should be admitted when: (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues. . . .

"[Of course, a predicate to the admissibility of such testimony is its relevance to some issue in the case.] Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter. . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative." (Internal quotation marks omitted.) *State* v. *Wargo*, 255 Conn. 113, 123–24, 763 A.2d 1 (2000).

The court did not abuse its discretion in admitting Edell's testimony on the subject of delayed reporting in child sexual abuse cases. On an issue similar to the one before us, our Supreme Court ruled that expert testimony that is focused on explaining delayed reporting is acceptable and helpful to a jury in interpreting the meaning of a delay when gauging a victim's credibility. See *State* v. *Ali*, supra, 233 Conn. 434–35. Further, our Supreme Court held in *Ali* that expert testimony of that type might disabuse the jury of "some widely held misconceptions . . . so that it may evalu-

ate the evidence free of the constraints of popular myths." (Internal quotation marks omitted.) Id., 434. Although the facts in *Ali* centered on the rape of an adult woman, that principle holds no less true in cases of child sexual abuse, especially where delayed reporting is concerned. That precept is predicated on our Supreme Court's recognition of the fact that trauma experienced by minor victims of sex abuse is beyond the understanding of the average person. See *State* v. *Spigarolo*, 210 Conn. 359, 378, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989).

Additionally, we previously have recognized the importance of admitting expert testimony regarding delayed reporting: "It is natural for a jury to discount the credibility of a victim who did not immediately report alleged incidents of abuse whether or not the defense emphasizes the delay in cross-examination. Thus, testimony that explains to the jury why a minor victim of sexual abuse might delay in reporting the incidents of abuse should be allowed as part of the state's case-in-chief." *State* v. *Cardany*, 35 Conn. App. 728, 732, 646 A.2d 291, cert. denied, 231 Conn. 942, 653 A.2d 823 (1994).

Here, there is ample evidence on which the court reasonably could have ruled that Edell was qualified as an expert in the area of child sexual abuse. Edell testified that she spent more than six years directing a pediatrics program that evaluated allegations of sexual abuse and screened thousands of telephone calls related to such abuse. She stated that she personally conducted more than 400 interviews with alleged victims of child abuse. After recounting her education and other intensive formal training in the area, she testified that she still trains state employees on numerous aspects of child sexual abuse, including the reporting or not reporting of such abuse.

Further, it is clear that Edell did not comment on the credibility of the victim in this case. "The distinction between testimony about the general behavior of victims and an opinion as to whether the instant victim is telling the truth is critical." (Internal quotation marks omitted.) *State* v. *Ali*, supra, 233 Conn. 432. Although the defendant cites Edell's responses to hypothetical questions in support of his assertion, nothing in the record indicates that that the expert witness did anything other than give her general opinion as to the hypotheticals before her. Moreover, after the disclosure of her qualifications, the remainder of Edell's testimony focused permissibly on the general behavior of the victims of child sexual abuse in relation to delayed reporting. As such, we cannot conclude that the testimony of the expert witness here served to confuse the jury. Rather, we conclude that Edell's testimony was relevant and material because it served to assist the jury concerning the credibility of victims such as the one in this case. In fact, as in *Ali*, the admission of the expert testimony here was proper because Edell has special knowledge on delayed reporting, her testimony focused on a subject unfamiliar to the average person, and such testimony reasonably could have aided the jury in determining relevant issues. See id., 434. Accordingly, we conclude that the court did not abuse its wide discretion in ruling on the admissibility of Edell's expert testimony.

The judgment is affirmed.

In this opinion the other judges concurred.