STATE OF CONNECTICUT *v.* ROBERT F. KELLEY, JR.
(AC 25813)

Schaller, DiPentima and Hennessy, Js.

Argued February 7—officially released May 16, 2006

*James O. Ruane*, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *David A. Gulick*, assistant state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Robert F. Kelley, Jr., appeals from the judgment of conviction, rendered after a jury trial, of operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a. On appeal, the defendant claims that the trial court improperly (1) admitted into evidence expert testimony, (2) admitted into evidence testimony that implied that field sobriety tests have scientific validity and (3) charged the jury. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our discussion. On December 28, 2002, Brian Newman, a Naugatuck police officer, stopped a motor vehicle being driven by the defendant and occupied by the defendant's girlfriend, Denise Fazzino.[1] As Newman approached the vehicle, he observed a twelve pack of beer in the backseat. He further observed that eight bottles were unopened and four bottles were missing. When he reached the vehicle, he detected an odor of alcohol and noticed that the defendant's eyes were bloodshot. An empty bottle of an alcoholic beverage known as Twisted Tea also was found between the driver's and front passenger seats.

---

[1] The vehicle was stopped because it bore an Arizona marker plate that was issued to another vehicle and because the defendant was not wearing his seat belt. As a result, the defendant also was charged with improper use of a license plate or marker in violation of General Statutes § 14-147 (c). He ultimately was convicted of violating § 14-147 (c). Neither the legality of the stop nor his conviction under § 14-147 (c) has been challenged on appeal.

Suspecting that the defendant had been drinking, Newman performed a number of tests to determine the defendant's level of intoxication. He first asked the defendant for his driver's license while asking him a set of questions.[2] Newman observed that the defendant had difficulty answering his questions and that he fumbled through his wallet while trying to locate his driver's license. He then asked the defendant to perform three standard field sobriety tests, consisting of the horizontal gaze nystagmus test,[3] the "walk and turn" test[4] and the "one leg stand" test.[5] The defendant failed all three tests.[6]

[2] Newman testified that he attended a forty hour law enforcement course on operating a motor vehicle while under the influence of intoxicating liquor and that the course taught him how to administer tests for determining different levels of intoxication. He further testified that a common test method is to ask the driver for his license or other identifying documents while asking him a set of questions and, by the driver's reactions, he can determine whether he believes the driver is intoxicated.

[3] Newman described the horizontal gaze nystagmus test as follows. The horizontal gaze nystagmus test evaluates nystagmus, the involuntary jerking or bouncing of the eyeballs, which can be exaggerated by alcohol consumption. The subject is asked to follow a pen with his or her eyes. The administrator looks for six signs of impairment. If four signs are identified, the subject fails. Newman testified that while testing the defendant, he identified six signs of impairment.

[4] Newman described the walk and turn test as follows. The walk and turn test evaluates a subject's coordination, balance and mental agility by asking the subject to perform multiple tasks simultaneously, usually listening to directions and taking a specified number of steps in a straight line. The administrator looks for eight signs of impairment. If two signs are identified, the subject fails. Newman testified that while testing the defendant, he identified five signs of impairment.

[5] During his testimony, Newman described the one leg stand test as follows. The one leg stand test evaluates the subject's coordination, balance and mental agility by asking the subject to lift one foot off the ground, point the elevated foot forward and count to thirty. The administrator looks for four signs of impairment. A subject automatically fails if he or she has to put the elevated foot on the ground before counting to thirty. While testing the defendant, Newman testified that the defendant had to put his foot down three times.

[6] While Newman was administering the walk and turn and the one leg stand tests, Paul Bendler, a Naugatuck police officer, appeared on the scene.

As a result, Newman placed the defendant under arrest. The defendant was taken immediately to the police station, where he ultimately refused to take a Breathalyzer test. The defendant also refused to answer Newman's questions concerning consumption of alcohol, drugs and food. The defendant then was charged with operating a motor vehicle while under the influence of intoxicating liquor in violation of § 14-227a.

The defendant elected a jury trial. Prior to the start of trial, the defendant filed a motion in limine to preclude the state and its witnesses from using any word or phrase that would suggest that the walk and turn and one leg stand tests are scientific in nature.[7] The defendant also argued that the state and its witnesses should be permitted to describe the defendant's actions only during the tests and should not be permitted to testify about whether they believed he passed or failed the tests, which he argued is a matter of common knowledge and, thus, should be left for the jury to decide. The court denied the motion.

During the trial, the state called three witnesses relevant to our discussion.[8] Newman testified that he administered the horizontal gaze nystagmus, walk and turn and one leg stand tests to the defendant. He described the defendant's actions during the three tests. He fur-

---

Bendler also testified that he observed the defendant fail the walk and turn and the one leg stand tests.

[7] Included in the defendant's list of words he argued should be prohibited were "test," "results," "pass," "fail" and "points."

[8] Two witnesses and the defendant testified for the defense. Fazzino testified that she was with the defendant on the night of his arrest and that he was not intoxicated. Betty Schiethe, Fazzino's mother, testified that she had dinner with the defendant on the night of his arrest and that he was not intoxicated. The defendant testified that he had two beers on the night of his arrest, but that he had both of them at least two hours before operating his motor vehicle. He also testified that he weighed approximately 195 pounds on the night of his arrest and that he had consumed a couple of plates of food at dinner. Finally, he disputed the officers' accounts of his performance on the field sobriety tests.

ther testified that on the basis of his observations, he believed that the defendant was impaired. Paul Bendler, a Naugatuck police officer, testified that he was present during the walk and turn and one leg stand tests, and that on the basis of his observations, he, too, believed that the defendant was impaired. Jack Richman, an optometrist and certified field sobriety test instructor, testified as an expert on the horizontal gaze nystagmus test and its relationship to the walk and turn and one leg stand tests when determining the accuracy rates of those tests. Richman also testified that if a person failed all three road sobriety tests, emitted a scent of alcohol, admitted to no medical issues and admitted to drinking, he believed, with a reasonable degree of scientific certainty, that such an individual would be impaired as a result of alcohol consumption and should not operate a motor vehicle.[9]

Prior to the conclusion of the trial, the defendant filed a request to charge, requesting that the court instruct the jury that it could use its common experiences in determining impairment and evaluating the defendant's performance on the field sobriety tests. The request was denied. The defendant ultimately was convicted. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly admitted expert testimony. His argument on this issue is twofold. He first argues that Richman improperly testified as to the ultimate issue of impairment. He also argues that Richman's testimony regarding the walk and turn and one leg stand tests was improper because it did not satisfy the criteria needed for expert testimony.

---

[9] The court prohibited Richman from testifying on the issue of the defendant's specific blood alcohol content.

"Our standard of review concerning evidentiary rulings is well established. The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *State* v. *Thompson*, 71 Conn. App. 8, 20, 799 A.2d 1126 (2002). With the standard of review in mind, we turn to the defendant's arguments.

The defendant's first argument that Richman improperly testified as to the ultimate issue of impairment is without merit. After reviewing the parties' briefs, it appears that both parties are under the assumption that Richman testified as to the ultimate issue of impairment. Similarly, the state argued in its closing argument: "Richman stated that with all the tests [the defendant] has taken and failed, all the clues, with everything else ruled out, his professional opinion is that [the defendant] was drunk. He was impaired." We disagree, however, that Richman testified as to the ultimate issue of the defendant's impairment.

"[T]he phrase ultimate issue is not amenable to easy definition. . . . As a rule, however, [t]estimony is objectionable if it embraces an opinion on the ultimate issue to be decided by the trier of fact. . . . It is improper for a witness to offer testimony that essentially constitutes a legal opinion about the guilt of the defendant." (Internal quotation marks omitted.) *State* v. *Morocho*, 93 Conn. App. 205, 223, 888 A.2d 164, cert. denied, 277 Conn. 915, 895 A.2d 791 (2006). Here, Richman never opined that the defendant was impaired. Instead, he merely responded to hypothetical questions

mirroring the facts at issue,[10] which we already have

[10] In response to questioning from the state, Richman testified in relevant part as follows:

"Q. Doctor, assume for this question that a subject submits to the standard field sobriety test. And the first test is horizontal gaze nystagmus. It's conducted by a trained person. That person detects six clues. Do you have an opinion whether or not that person is impaired?

"A. If there were six clues, my opinion, there are signs of impairment seen through the eye movement. I need to find out what's the cause of that impairment.

"Q. I'm sorry, walk and turn, how many clues total?

"A. Walk and turn I believe is eight. You need to fail—four is a failure.

"Q. One leg stand?

"A. I think there are four. We need two to fail.

"Q. Now, again, using the same set of circumstances, that subject submits to, now this person submits to the walk and turn, four clues are detected; do you have an opinion on whether or not it's more probable or less probable that he is impaired based on the two tests?

"A. More probable.

"Q. They submit to the walk—I'm sorry, one leg stand. They place their foot down three times; what is that considered?

"A. That's a failure.

"Q. All three tests added up after the third test, more likely or less likely to be impaired?

"A. I believe in my mind, as a clinician, it's clearly more likely there is. It's like a headache, but now you're nauseous with the headache and you have dizziness with the headache. So, you start to have three things together that gives you much more evidence that there's something wrong and there's impairment.

"Q. Now, doctor, taking that same example and the subject was asked if he was ill, if he was injured, if he needed immediate medication. Was he on medication? Was he diabetic? Does he need medication at this time? Does he take insulin? And he admits no to all of those. And the person administering the test detects an odor of alcohol on him, slurred speech . . . again, after he denies all the medical issues, there's an odor of alcohol, slurred speech and admits to drinking alcohol. What would your opinion be of this person at this point?

"A. My opinion would be, one, that they're impaired. Two, the most likely cause until I can get a further test, most likely cause would be the central nervous system depressant of alcohol.

"Q. Same set of circumstances. The person [is] considered to fail all three tests, admits to no medical issues, admits to drinking, smells of alcohol; do you have an opinion within a reasonable degree of scientific certainty on whether or not that person is operating the motor vehicle under the influence?

"A. In my opinion, he would be—that individual would be impaired and

held is permissible. *State* v. *Abreu*, 34 Conn. App. 629, 633–34, 643 A.2d 871, cert. denied, 230 Conn. 915, 645 A.2d 1019 (1994).

The defendant's second argument, that Richman's testimony regarding the walk and turn and one leg stand tests was improper because it did not satisfy the criteria needed for expert testimony, is also without merit. "Expert testimony generally is admissible if (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues. . . . Although expert testimony may be admissible in many instances, it is required only when the question involved goes beyond the field of the ordinary knowledge and experience of the trier of fact." (Citation omitted; internal quotation marks omitted.) *State* v. *Padua*, 273 Conn. 138, 149, 869 A.2d 192 (2005). After reviewing the record, we conclude that Richman's testimony satisfied the criteria set forth in *Padua*.

Regarding the first criterion, as an optometrist and certified field sobriety test instructor, Richman had knowledge directly applicable to the matter in issue: the accuracy rates of the tests used to determine whether the defendant was impaired on the night of his arrest. Regarding the second criterion, Richman's expertise in interpreting the combined significance of the results of the three field sobriety tests in determining accuracy was not common to the average person. Regarding the third criterion, the accuracy rates of the field sobriety tests in determining impairment was help-

should not be operating a motor vehicle, an airplane or boat.

"Q. Likely cause based on?

"A. Likely cause based on the questions that were answered as well as the signs of impairment, that would be mostly—likely would be due to alcohol.

"Q. Thank you, doctor."

ful to the jury in considering the issue of impairment, especially in light of the fact that the defendant refused to take a Breathalyzer test on the night of his arrest. Because Richman's testimony satisfied the three criteria set forth in *Padua*, the court did not abuse its discretion in permitting Richman to testify as an expert.[11]

## II

The defendant next claims that the court improperly admitted testimony that implied field sobriety procedures have scientific validity. He specifically argues that the state should have been prohibited from using "words like 'tests,' 'results,' 'pass,' 'fail' and 'points' when referring to the 'walk and turn' and 'one leg stand' tests because such words wrongly [implied] that the matters had scientific validity and, thus, [prejudiced] the defendant."[12] Because this is an evidentiary matter, our standard of review is the abuse of discretion standard. See *State* v. *Thompson*, supra, 71 Conn. App. 20.

The defendant cites *United States* v. *Horn*, 185 F. Sup. 2d 530 (D. Md. 2002), in support of his argument that the testing language used by the state's witnesses to describe the field sobriety tests was admitted improperly. In *Horn*, the United States District Court for the District of Maryland held that testing language may be used to reference a field sobriety test only after the scientific validity of the test has been established. Id., 559–61. *Horn*, however, is not binding on us, and we decline the defendant's invitation to adopt its holding.

[11] The defendant argues that the walk and turn and one leg stand tests are within the common knowledge of lay jurors and, thus, Richman's testimony on the two tests should have been excluded. Even if this argument is correct, Richman's testimony was offered to show the combined significance of the three field sobriety tests, which is not within the common knowledge of lay jurors.

[12] We will refer to the defendant's list of words collectively as "testing language."

Although there may be situations when language imbues unscientific evidence with scientific significance, using testing language to describe field sobriety tests is not one of them. Words like "tests," "results," "pass," "fail" and "points" are commonly used by the average person to describe unscientific topics. In this context, the language is nothing more than descriptive and does not automatically imply that the topic is scientific in nature. We therefore hold that the state is not required to lay a scientific foundation before it or its witnesses use testing language to describe field sobriety tests.

## III

The defendant last claims that the court's jury charge was improper. Specifically, the defendant argues that the court's jury charge was deficient and prejudicial in two respects: (1) it failed to instruct the jury that it could use its common experiences in determining impairment; and (2) it failed to instruct the jury that "field sobriety evaluations are not scientific evidence." We are not persuaded.

These additional facts are relevant to our review of the defendant's claim. The defendant submitted a written request to charge and proposed the following language: "You have heard . . . Newman testify [that] he had [the defendant] perform certain field evaluations to assess his balance, coordination, and ability to follow directions. You may consider the observations made by. . . Newman of the defendant's performance on the field evaluations. *These evaluations are not scientific evidence.* Rather, the descriptions of [the defendant's] performance on the field evaluation[s] are for you to consider in light of your common experiences in determining whether the [d]efendant was intoxicated." (Emphasis in original.) During the on the record charging conference, counsel for the defendant made the

following statement: "If I may just have a moment? With respect to my request to charge, I have in the second paragraph a highlighted sentence, [which is that] these evaluations are not scientific evidence. I think in light of the court's ruling in this matter that the sentence should be stricken. With respect to the rest of the charge . . . I would ask the court [to use my proposed language]."

The court denied the defendant's request to charge and used the following language regarding expert testimony and impairment: "An expert is permitted not only to testify to facts that he personally observed, but also to state his opinion about certain circumstances. This is allowed because an expert is, from his experience, research and study, supposed to have particular knowledge of the subject of the inquiry and be more capable than a layperson . . . . No such testimony is binding upon you, however, and you may disregard such testimony . . . . It is for you to consider the testimony with the other circumstances in the case and, using your best judgment, determine whether you will give any weight to it and, if so, what weight you will give to it. . . . A person is under the influence of an intoxicating liquor when, as a result of drinking such beverage, that person's mental, physical or nervous processes have become so affected that the person lacks to an appreciable degree the ability to function properly in relation to the operation of his motor vehicle. Such person's physical or mental capabilities must have been impaired to such degree that the person no longer has the ability to drive a vehicle with the caution characteristic of a sober person of ordinary prudence under the same or similar circumstance."

"The framework used to evaluate a challenge to a jury instruction given by the trial court is well established. Our review of the defendant's claim requires that we examine the court's entire charge to determine

whether it is reasonably possible that the jury could have been misled by the omission of the requested instruction. . . . While a request to charge that is relevant to the issues in a case and that accurately states the applicable law must be honored, a court need not tailor its charge to the precise letter of such a request. . . . If a requested charge is in substance given, the court's failure to give a charge in exact conformance with the words of the request will not constitute a ground for reversal. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . Additionally, we have noted that [a]n error in instructions in a criminal case is reversible error when it is shown that it is reasonably possible for errors of constitutional dimension or reasonably probable for nonconstitutional errors that the jury [was] misled." (Citations omitted; internal quotation marks omitted.) *State* v. *Aviles*, 277 Conn. 281, 309–10, 891 A.2d 935 (2006).

With this framework in mind, we turn to the defendant's claims. The defendant's claim that the jury charge was deficient because it failed to instruct the jury that it could use its common experiences in determining impairment is without merit. Although the court did not adopt the precise language proposed by the defendant, the court's jury charge substantially covered the defendant's request. For example, instead of specifically instructing the jury that "the descriptions of [the defendant's] performance on the field evaluation[s] are *for you to consider in light of your common experiences* in determining whether the [d]efendant was intoxicated," the court instructed the jury that it "must consider all the evidence in light of reason, experience, common sense." The defendant's other language regarding common experiences, expert testimony and

impairment was also substantially covered in the court's jury charge.

The defendant's claim that the jury charge was improper because it failed to instruct the jury that "field sobriety evaluations are not scientific evidence" is not reviewable because the defendant specifically withdrew that request from his request to charge and, thus, the issue was not raised or preserved at trial.[13] See *State* v. *Miner*, 197 Conn. 298, 305, 497 A.2d 382 (1985).

The judgment is affirmed.

In this opinion the other judges concurred.

---

[13] In his brief, the defendant concedes that he withdrew the challenged request from his request to charge. He argues that the claim is reviewable because he is also challenging the court's related evidentiary rulings. The argument is without merit.